## RECKNAGEL v. STEINWAY et al.

(Supreme Court, Appellate Division, First Department. June 9, 1905.)

1. CONTRACT FOR SUPPORT—ACTION FOR BREACH—PARTY PLAINTIFF.

A father contracted with the wife of his son, because of certain habits of the son and his consequent inability to support his family, to make certain payments to trustees for that purpose until the children reached the age of 21. The trustees were not parties to the main agreement, and the duty required of them was merely to receive the money and pay it

over to the wife, without accountability of any kind to the obligor. *Held,* that the wife was entitled to sue in her own name for breach of the contract.

2. SAME—CONSTRUCTION.

The contract provided that the payments were to be made by the obligor until the youngest of the obligor's grandchildren or the last survivor of them should attain 21 years of age, and that the death of the mother or any of the children should effect no change in the contract so long as one child should remain living. There was no express provision limiting the payments to the lifetime of the obligor's son. When the contract was made, the obligor knew of the intention of the wife to procure a divorce from her husband. The obligee stipulated to make no claim for alimony or for support of the children against the husband in the divorce suit. *Held,* that a contention that the agreement was merely substitutionary on the part of the obligor, which bound him only to do that which his son was obliged to do by law, and that on the death of the obligor's son the obligation to make the payments ceased, was untenable.

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Ottilie C. Recknagel against Charles H. Steinway and others, as executors of William Steinway, deceased. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

See 69 N. Y. Supp. 132.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

H. W. Taft, for appellants.
R. B. Moffatt, for respondent.

PATTERSON, J. The plaintiff recovered a judgment in this action against the executors of the will of William Steinway, deceased, for the breach of a contract made between herself and William Steinway, by which contract provision was made by him for the support of the plaintiff and for maintaining and educating her children. At the time the contract was made (June 24, 1895) the plaintiff was the wife of George A. Steinway, a son of William, and there were three children living of the said George A. Steinway and the plaintiff. In the contract the marriage of the plaintiff and George A. Steinway is set forth, and the names and ages of their children are stated. It is then recited in the instrument that George A. Steinway, owing to certain weaknesses, infirmities, and habits, is unable to support and maintain his wife, and to support, maintain, and educate the children, and that William Steinway is desirous of maintaining and supporting the plaintiff and of supporting, maintaining, and educating the children in a manner comporting with their position, and that he is desirous that the children should be maintained, supported, and educated under the guidance and direction of their mother. The agreement then proceeds to provide as follows: That the party of the first part (William Steinway) agrees to pay to two trustees for the use of the party of the second part (the plaintiff) $6,000 per annum from the 1st day of July, 1895, to the 1st day of July, 1898, in quarterly payments of $1,500 each for the support of and maintenance of the plaintiff and for the maintenance, support, and education of the three children, and there-

after from the 1st day of July, 1898, until the youngest of the children, or the last survivor of them, should arrive at the age of 21 years, to pay to the trustees $7,500 annually in quarterly payments. The party of the second part (the plaintiff) agrees that she will support and maintain herself and support, maintain, and educate the children, and provide a home for them, out of the proceeds of the sum agreed to be paid by William Steinway to the trustees for her benefit, in such manner as may be most advisable for the welfare of herself and the children; and she agrees that she will not enforce or attempt to enforce any judgment, order, or decree of any court or judge entitling her to recover or collect from George A. Steinway any alimony, allowance, or other provision for the support and maintenance of herself or for the support, maintenance, and education of the three children. It is then provided in the agreement that no explanations, statements, accountings, or reckonings shall be demanded by William Steinway of the trustees or of the plaintiff, or be made or rendered by the plaintiff or by the trustees, as to the manner of the disbursement of the moneys agreed to be paid by William Steinway, except that receipts should be given by the trustees to William Steinway and by the plaintiff to the trustees. Provision is then made for George A. Steinway being allowed to visit the children at their home once a month, and at hours convenient to the plaintiff; and that, in the event of the death of the plaintiff, the children shall be placed under the care and supervision of such persons as the trustees, together with William Steinway, may nominate, constitute, and appoint; the death of the plaintiff and of any of the children not to affect, except as before mentioned, the terms of the agreement, which is made binding upon the heirs, executors, and administrators of William Steinway. Appended to the instrument is an acceptance by the trustees, and an agreement upon their part to perform their duties faithfully. William Steinway made payments under this agreement until his death, which occurred November 30, 1896. Since that time no payments have been made. The plaintiff obtained a divorce from George A. Steinway on September 26, 1895. No provision for alimony or for the support and maintenance of the children was contained in the decree of divorce. The plaintiff married Carl L. Recknagel December 28, 1895, with the knowledge of William Steinway, who continued to make quarterly payments under his agreement after the divorce and after the remarriage of the plaintiff. George A. Steinway died September 14, 1898. The executors of William Steinway having refused to make payments after his death, this action was brought for a breach of the contract. On the trial a verdict was directed by the court in favor of the plaintiff, and from the judgment entered thereon the defendant executors appeal, as does also Louis Von Bernuth, trustee under the agreement above mentioned. Mr. Von Bernuth appears to be the sole trustee defendant, the action having been discontinued as against Mr. Roesler, who was his co-trustee. It is not necessary to refer to the trustee's appeal, as it has not been urged or referred to by counsel.

Two questions are now presented for consideration. The first

relates to the right of the plaintiff to maintain the action. We are of the opinion that the plaintiff is the real party in interest under the agreement made between herself and her father-in-law. That agreement was made in form and in effect between those parties only. It was a contract made for the benefit of the plaintiff and of her children, and to supply her with moneys for the purposes stated therein. The trustees were not parties to the main agreement, and the duties required of them were only to receive money and pay it over to the plaintiff without accountability of any kind to Mr. William Steinway. He contracted with the plaintiff to pay certain moneys to third parties for the benefit of herself and her children. The action is brought for the breach of that contract, and the cause of action does not inhere in the trustees, but in the plaintiff. She is the person damnified by the breach of the covenant made directly with her, and with no one else. The gentlemen described as trustees were only to be depositaries of funds which they were to pay out when received, and there was no other active duty imposed upon them.

The serious contest relates to the character and scope and legal nature of the contract, and the defendants insist that, in view of the recitals of the instrument and the surrounding circumstances under which it was executed and delivered, it would appear that it was intended by the parties thereto purely as a substitution of William Steinway to perform the legal obligation resting upon George A. Steinway to support his wife and family, and therefore that all obligations assumed by William Steinway under that instrument ceased with the death of his son George. We do not gather from any of the sources referred to by the appellants that the contract was one by which William Steinway only assumed the duty and obligation imposed by law upon his son to support his family. We are unable to see how, in view of the provisions of the contract itself, it can be successfully claimed that the obligation assumed by William Steinway was one that would terminate upon the death of his son. So far from the contract being one by which William Steinway simply substituted himself in his son's place to furnish support to that son's family with an implication that the contract was to endure only so long as George Steinway lived, we conceive that, in view of the surrounding circumstances under which it was made, it was intended by William Steinway to be one making provision for the support and maintenance of the plaintiff, as well as for the support, maintenance, and education of her children until the youngest child should attain the age of 21 years. The recitals are only statements of the inducement which led William Steinway to make the family arrangement embraced in the contract. It is not urged that the contract was not upon a sufficient consideration. George A. Steinway, in consequence of weaknesses, "infirmities, and habits," is declared to be unable to support and maintain his wife and children, and William Steinway was desirous of supporting and maintaining and educating his grandchildren in a manner comporting with their position, and was desirous that they should be maintained, supported, and educated under the guidance of their mother.

Those recitals, in connection with the provision of the contract that the payments were to be made until the youngest of the children or the last survivor of them should reach the age of 21 years, indicate that it was in William Steinway's mind to provide for the support, education, and maintenance of the children during the minorities of those children and until the youngest should attain full age; and, further, the contract expressly provides that the death of the plaintiff or of any of the children shall effect no change, except as hereinbefore provided, in the terms of the agreement, so long as one child shall remain living. Implications cannot be read into this contract in violation of or antagonistic to its express terms and clear provisions. If William Steinway had intended to limit his obligation to the lifetime of his son, George, it would have been very easy for him to have said so. There is nothing in the proofs authorizing the inference that the contract was to become inoperative and the obligation of William Steinway was to cease if his son, George, died within a month or a year or at any other period after the execution of the contract. When it was made, William Steinway knew the exact situation of the plaintiff and of her intentions with respect to procuring a divorce from her husband. He knew it was in contemplation, and, although the plaintiff stipulated to make no claim for alimony or for the support of the children against her husband, that mere coincidence does not authorize the court to write into this agreement that the provision made was only by way of substitution for alimony and support of children under a decree which provision would expire with the death of her husband. That which induced William Steinway to make the contract was his desire to provide for the proper maintenance and support of his daughter-in-law and her children for fixed periods of time, and for the education of the children during these periods. We think that the terms of the contract are sufficiently clear and explicit in themselves to show that the theory of the appellants that William Steinway merely made a substitutionary agreement binding himself only to do that which his son was obliged to do by law is altogether inadmissible. No question is made as to the measure of damages.

The judgment should be affirmed, with costs.

INGRAHAM and LAUGHLIN, JJ., concur.

McLAUGHLIN, J. (dissenting). In the consultation on this case the late Presiding Justice VAN BRUNT and I dissented from the conclusions of the majority of the court. The grounds upon which we dissented were identical, and the Presiding Justice was assigned to express our views in an opinion. This opinion, which was his last judicial act, he prepared on the day before his death. I adopt it as my own. The opinion is as follows:

VAN BRUNT, P. J. I cannot concur in the conclusion arrived at by the majority of the court. Upon a reading of the agreement which forms the basis of this action it seems to me clear that the sole intention of the parties was that William Steinway should as-

sume the obligations which rested upon his son, George A. Steinway, to support his wife and family; and to that end he agreed to contribute to her the sums of money provided for in said agreement. The agreement referred to reads as follows:

"Agreement made and entered into this twenty-fourth day of June, 1895, by and between William Steinway, party of the first part, and Ottilie C. Steinway, party of the second part, witnesseth:

"Whereas heretofore and on the 17th day of April, 1888, George A. Steinway, son of William Steinway, and Ottilie C. Steinway were married;

"Whereas heretofore there were born to the said George A. Steinway and Ottilie C. Steinway, three children, namely, Ottilie Marie, born January 28, 1889, Clara Beatrice, born August 4, 1890, and Gertrude Marguerite, born November 18, 1892; and

"Whereas the said George A. Steinway, owing to certain weaknesses, infirmities and habits, is unable to support and maintain the said Ottilie C. Steinway, and to support, maintain and educate the said children; and

"Whereas the said William Steinway is desirous of maintaining and supporting the said Ottilie C. Steinway and of supporting, maintaining and educating the said children in a manner comporting with their position and is desirous that the said children should be maintained, supported and educated under the guidance and direction of their mother Ottilie C. Steinway:

"Now, therefore, in consideration of the premises and of the covenants hereinafter contained, and of the sum of one dollar by each party to the other in hand paid, the receipt whereof is hereby acknowledged, this agreement witnesseth:

"First. The party of the first part agrees to pay over to August Roesler and Louis Von Bernuth, as trustees, of and for the use of the party of the second part, the sum of six thousand dollars per annum, from the first day of July, one thousand eight hundred and ninety-five, to the first day of July, one thousand eight hundred and ninety-eight, in quarterly payments of fifteen hundred dollars each on the first days of July, October, January and April, in each of said years, for the support and maintenance of the said party of the second part and for the support, maintenance and education of the said Ottilie Marie, Clara Beatrice and Gertrude Marguerite, children of the said George A. Steinway and of the party of the second part, and thereafter, that is, from the first day of July, one thousand eight hundred and ninety-eight, until the said Gertrude Marguerite, the youngest of the said children, or the last survivor of said children, shall arrive at the age of twenty-one years, to pay unto the said August Roesler and Louis Von Bernuth, as trustees as aforesaid, the sum of seven thousand five hundred dollars annually, in quarterly payments of one thousand eight hundred and seventy-five dollars each, on the first days of July, October, January and April, in each of said years.

"Second. Said party of the second part covenants and agrees that she will support and maintain herself, and support, maintain and educate the said children Ottilie Marie, Clara Beatrice and Gertrude Marguerite and provide a home for them out of the proceeds of the sums hereinbefore agreed to be paid to the said trustees for her benefit, in such manner as may be most advisable for the welfare of herself and the said children; and the said party of the second part further agrees that she will not enforce or attempt to enforce any judgment, order or decree of any court or judge entitling the party of the second part to recover or collect from the said George A. Steinway, any alimony allowance or other provision for the support and maintenance of herself or for the support, maintenance and education of the said Ottilie Marie, Clara Beatrice and Gertrude Marguerite.

"Third. No explanation, statements, accountings or reckonings shall be demanded by the party of the first part of the said trustees or of the party of the second part or be made or rendered by the said party of the second part, or by said trustees, as to the manner of the disbursements of the moneys hereinbefore agreed to be paid, except that receipts for the quarterly payments shall be given by the said trustees to the party of the first part, and by the party of the second part to the said trustees, upon the delivery quarterly of the sums hereinbefore agreed to be paid.

"Fourth. The party of the second part hereby covenants and agrees to permit the said party of the first part or the said George A. Steinway to visit and see the said children at least once in each month at their home for a reasonable time and at hours convenient to the party of the second part and conducive to the welfare of the said children.

"Fifth. In the event of the death of the party of the second part said children Ottilie Marie, Clara Beatrice and Gertrude Marguerite shall be placed under the care and supervision of such person as the above mentioned trustees, together with the party of the first part may nominate, constitute and appoint. The death of the party of the second part and of any of the children shall effect no change except as hereinbefore provided, in the terms of this agreement, so long as one child shall remain living.

"Sixth. In the event of the death of either of the said trustees, the survivor may, with the party of the first part, appoint in writing a successor to the trustees so deceased, and such successor shall thereupon have all the powers and duties of the deceased trustee.

"Seventh. This agreement shall be binding upon the heirs, executors and administrators of the party of the first part.

"In witness whereof the parties hereunto have hereunto set their hands and seals the day and year first above written.

                     "William Steinway.     [Seal.]
                     "Ottilie C. Steinway.     [Seal.]

"In presence of .
   "Aug. Roesler, Jr."

It will be seen that the moving consideration for the execution of the agreement is that George A. Steinway, owing to certain weaknesses, infirmities, and habits, was unable to support and maintain his wife and children, and that William Steinway was desirous of undertaking this duty in his stead. This is the sole consideration which is recited in the agreement, or which the evidence affords. It is to be observed that there is no recitation in the agreement of any financial inability upon the part of George A. Steinway to fulfill his obligations to his wife and children. His inability in the agreement is said to be because of certain weaknesses, infirmities, and habits, and nothing else. That this agreement was intended between the parties only to take the place of the obligation of George A. Steinway towards his wife and children is further evidenced by the fact that the plaintiff, the then wife of George A. Steinway, agreed, in view of this provision made for her and her children by William Steinway, not to enforce or attempt to enforce any judgment, order, or decree of any court or judge entitling her to recover or collect from George A. Steinway any alimony, allowance, or other provision for the support and maintenance of herself, or for the support, maintenance, and education of her children. If there was any doubt as to the effect of the recitals to which attention has been first called, it would seem to be absolutely certain, in view of this agreement upon the part of the plaintiff, that there was an understanding of all the parties that the agreement was to stand in the place of the legal obligations which George A. Steinway had to support his wife and infant children. The very term for which the agreement was to last is a further indication in the same direction, namely, that, when George A. Steinway's obligation to support his infant children ceased by the arrival at age of the youngest survivor of them, the agreement was to end. If this is the fact, then the consideration to support this agree-

ment only lasted so long as the duty rested upon George A. Steinway. It was to fulfill his obligation, and when his obligation ended there was no further consideration whatever upon which this agreement could rest.

It may be said that the last clause of the fifth paragraph of the agreement, which says that "the death of the party of the second part and of any of the children shall effect no change except as hereinbefore provided, in the terms of this agreement, so long as one child shall remain living," militates against this theory. That this clause is not to be literally construed is evident from the fact that it is in hostility to the provision that the agreement was to terminate when the youngest surviving child arrived at 21 years. It is not contended that it was the intention of the parties that this obligation upon the part of William Steinway should continue so long as any of the children should live. It is clear, therefore, that this provision must be read in connection with the recitals of the agreement and the active part thereof relating to the payment of the annual stipend. I cannot see, taking all the provisions of this agreement together, how any other conclusion can be arrived at than that it was intended, as already stated, to be a substitute for the obligations of George A. Steinway to support his wife and infant children. The parties evidently never contemplated the contingency that George A. Steinway might die before his youngest surviving child became of age. It is not claimed that there was any consideration whatever, if it was not this. Certainly the evidence discloses none. On the contrary, it shows that there was no other consideration. When that consideration fails, how can the agreement be supported?

If this is not the true construction, then we have this anomaly: George A. Steinway's wife and children are receiving this allowance, undoubtedly based on his obligation and financial ability to support them, and also have the benefit of his estate, which presumptively was the basis of his obligation to contribute to such support. It seems to me that this agreement, notwithstanding its language, must be construed in view of its evident consideration, precisely the same as decrees of divorce were construed prior to the time when the court had power to alter the provisions of such decrees in respect to alimony after they were entered. The usual form in which such decrees read was that the husband (the defendant) should pay to the wife (the plaintiff) a certain sum for her support and maintenance as long as she should live. This obligation, notwithstanding the broad language of the decree, terminated with the death of the defendant, the husband. Field v. Field, 15 Abb. N. C. 434. Nowhere in the books can be found a case where the estate of the deceased husband has been compelled to pay alimony, notwithstanding the general language of the decree.

There might have been some question as to the measure of damages, but, as no point has been raised in respect thereto, it is not necessary to consider the same.

The judgment should be reversed.